UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

JOSE ANTONIO PEREZ #404232,

    Plaintiff,

v

MICHIGAN STATE POLICE,
TROOPER DAVID CARDENAS,
TROOPER JAMES YATES, and
TROOPER CASEY OMILJAN,

    Defendants.

No. 1:19-cv-00666

HON. JANET T. NEFF

MAG. SALLY J. BARENS

| | |
|---|---|
| Jose Antonio Perez #404232<br>*In pro per*<br>Carson City Correctional Facility<br>10274 Boyer Road<br>Carson City, MI 48811-9746 | Andrew J. Jurgensen (P81123)<br>Assistant Attorney General<br>Attorney for Defendants<br>State Operations Division<br>P.O. Box 30754<br>Lansing, MI  48909<br>517.335.7573<br>jurgensena2@michigan.gov |

                              /

**DEFENDANTS JAMES YATES AND CASEY OMILJAN'S OBJECTIONS TO
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [ECF 22]**

    In response to Magistrate Judge Sally J. Berens's Report and Recommendation (R. 22, Report and Recommendation, PageID.247), Defendants James Yates and Casey Omiljan object to Judge Berens's recommendation that their Motion for Summary Judgment (R. 14, Motion, PageID.40) be denied for the reasons stated below.  28 U.S.C. § 636(b)(1)(C).

1

## STATEMENT OF FACTS

Plaintiff, Jose Antonio Perez, brings this 42 U.S.C. § 1983 lawsuit against three Michigan State Police (MSP) troopers: David Cardenas, James Yates, and Casey Omiljan. (R. 1, Complaint, PageID.1.) Perez's claims sound in Fourth Amendment violations, alleging Cardenas used excessive force in striking Perez "five times" in the head with a "weapon" while Yates and Omiljan held him down to be struck. (PageID.3); (R. 4, Screening Opinion, PageID.24.)

This alleged striking took place after a lengthy chase and search for Perez by the three trooper Defendants, among other officers. According to the police report regarding the incident written by Yates, he and his partner responded to a call regarding shots fired at a home. (R. 15-1, Motion for Summary Judgment, Exhibit A, Police Report, PageID.59.) The homeowner who had called in the shooting informed the officers that he believed Perez was the shooter based on earlier threats he had received from Perez. (PageID.60.)

The officers then received a tip that Perez was at a gas station in Howard City, MI. (PageID.65.) When the officers arrived at the gas station, a van, driven by Perez, pulled away and began heading north down the highway. (*Id.*) The officers followed the van, with pursuit speeds reaching up to 90 mph. (*Id.*) The chase ended near a wooded area when Perez and a female passenger exited the van and fled into the woods despite verbal commands to stop. (*Id.*) The officers requested a K-9 unit be deployed to search the woods for Perez and his accomplice. (*Id.*) Cardenas arrived approximately thirty minutes later with a police K-9. (*Id.*)

Officers began to search the woods and, after a lengthy search, came across Perez and his accomplice. (PageID.71.) Perez's accomplice followed commands to lay down on the ground, but Perez threw a handgun into the brush and ran. (*Id.*) The K-9 and Cardenas gave chase. (R. 15-2, Motion for Summary Judgment, Exhibit B, Deposition Transcript, PageID.138.) During that chase, as the K-9 was attempting to bring Perez down, Perez stabbed the K-9 in the neck with a knife. (PageID.138-139.) Perez then fell over or into a "valley," and when he got back on his feet, Cardenas deployed his taser on Perez, bringing him back to the ground. (PageID.138.) During this final chase, the group crossed the highway where other officers were stationed, and Omiljan spotted them. (PageID.94.) Omiljan followed them into the woods and came across Perez on the ground after having been tased by Cardenas. (PageID.94-95.) Omiljan handcuffed Perez as Cardenas wrangled the K-9 and brought Perez back out to the road where the patrol cars were parked. (PageID.95.) At some point during the takedown and handcuffing, the K-9 had removed one of Perez's shoes. (PageID.139.)

Once back to the roadway, the officers leaned Perez up against a patrol car. (PageID.140.) According to Perez, Yates and Omiljan were holding him, or detaining him, near the car because they suspected he might try to flee again. (*Id.*) After a few minutes, Cardenas approached the group with Perez's shoe that had been removed by the K-9. (*Id.*) According to Perez, Cardenas struck him with his shoe several times then mashed it in his face, like a pie, while saying "you want to

stab my dog?"[1] (PageID.141-143.) Perez alleges that Yates and Omiljan did not hit him or strike him at all, but that they "didn't pull [Cardenas] away" and held him in place. (PageID.142.)

Yates and Omiljan remember the situation differently. Both submit affidavits to the Court that tell slightly different stories than one another, but are materially the same. (R. 15-3, Motion for Summary Judgment, Exhibit C, Affidavit of James Yates, PageID.144); (R 15-4, Motion for Summary Judgment, Exhibit D, Affidavit of Casey Omiljan, PageID.222.) Yates and Omiljan both remember Cardenas hitting Perez with a shoe *only one time* somewhere in his chest area. (PageID.146); (PageID.244.) At the preliminary examination of Perez's underlying criminal case for this incident, on cross examination, Cardenas admitted to hitting Perez with his shoe out of frustration because Perez stabbed the K-9. (R. 15-5, Motion for Summary Judgment, Ex. E, Prelim Transcript, PageID.230.) At the hearing, Perez commented in open court: "At least there's some honesty. I appreciate that." (*Id.*)

Perez filed this civil action on August 22, 2019. (PageID.1.) On September 4, 2019, this Court issued a screening opinion pursuant to the Prison Litigation Reform Act dismissing the Michigan State Police as a Defendant because of sovereign immunity and identifying the remaining claims as excessive force claims against Cardenas, Yates, and Omiljan. (PageID.23-24.)

---

[1] In his complaint, Perez alleges he was struck with a weapon. (PageID.3.) At his deposition, he admits it was a shoe. (PageID.142.)

4

On April 9, 2020, Yates and Omiljan moved for Summary Judgment. (PageID.40.)  They argued that they did not use excessive force against Perez by merely holding him—a flight risk—in place after a lawful arrest.  (PageID.50-52.)  They also argued that Perez could not overcome summary judgment on a failure to intervene theory because they did not know Cardenas would strike Perez and they did not have time to intervene before the strike landed.  (PageID.52.)  Finally, they argued that they were entitled to qualified immunity on all of Perez's claims because they did not violate his clearly established constitutional rights. (PageID.53-56.)

On October 1, 2020, the Magistrate Judge issued her report and recommendation regarding Yates and Omiljan's motion for summary judgment. (PageID.247.)  The Magistrate Judge recommended denying their motion because of a perceived fact dispute regarding the incident underlying this lawsuit.  The Magistrate Judge held that because Perez—and only Perez—claims Cardenas hit him five times with the shoe, if Perez is correct, Yates and Omiljan would have had time to intervene and prevent Cardenas from further strikes.  (PageID251-252.)

Yates and Omiljan object to the Magistrate Judge's recommendation.  28 U.S.C. § 636(b)(1)(C).

## LAW AND ARGUMENT

Yates and Omiljan moved for summary disposition under Fed. R. Civ. P. 56 of the Federal Rules of Civil Procedure.  R. 56 provides that summary judgment shall be granted if the pleadings and evidence show that there is no genuine issue of

5

material fact. "Where *the record taken as a whole* could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis added).

Generally, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to avoid summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. The nonmovant may not simply rely on self-serving allegations, particularly when met with record evidence. *Mosquera v. MTI Retreading Co.*, 745 F. App'x 568, 573 (6th Cir. 2018) ("our court has repeatedly said that unsubstantiated, *self-serving assertions* will not preclude an adequately supported motion for summary judgment from being granted" (emphasis added)); *see also Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2016); *Bradley v. Wal-Mart Stores, E., LP*, 587 F. App'x 863, 866 (6th Cir. 2014); *L.F.P.IP, LLC v. Hustler Cincinnati, Inc.*, 533 F. App'x 615, 620 (6th Cir. 2013) (explaining that a party's "self-serving" testimony, viewed in light of his sworn statements to the contrary, "fail[ed] to present a genuine issue of fact"). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In addition, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an *absence* of

evidence to support the nonmoving party's case." *Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986) (emphasis added). The non-moving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Barnhart v. Pickrel, Schaeffer, & Ebeling Co.*, 12 F. 3d 1382, 1389 (6th Cir. 1993).

The *Celotex* Court extrapolated on the purpose of summary judgment as a tool to "isolate and dispose of factually unsupported claims or defenses." *Celotex Corp.*, 477 U.S. at 323–24. The Court concluded:

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex Corp.*, 477 U.S. at 327 (internal quotations and citations removed).

### I. Perez has not established a fact question regarding whether Yates and Omiljan failed to intervene.

The Magistrate Judge recommended Yates and Omiljan's motion be denied on a failure to intervene theory,[2] but Perez did not create a genuine issue of material fact that Yates and Omiljan violated his Fourth Amendment rights under such a theory. To be liable for failure to intervene and prevent the use of excessive force, a two-prong test must be satisfied: "(1) the officer observed or had reason to

---

[2] Perez did not allege a failure to intervene claim in his complaint. (PageID.3.) However, his factual allegations imply such a claim. (*Id.*)

7

know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott,* 119 F.3d 425, 429 (6th Cir. 1997).

These prongs can be boiled down to knowledge and opportunity, and Yates and Omiljan had neither. While their recollections differ slightly in the minutiae, both Yates and Omiljan recall Cardenas hitting Perez with a shoe *once*. (PageID.146); (PageID.244.) And at Perez's preliminary examination, Cardenas testified that he hit Perez with a shoe once, to which Perez verbally agreed. (PageID.230.)[3] Simply put, Yates and Omiljan had no idea Cardenas would hit—or throw—a shoe at Perez, and there was nothing either could do to prevent it. Furthermore, there was no subsequent hitting they could have prevented after witnessing the first instance.

The Magistrate Judge noted that Perez claims Cardenas struck him five times, not once. (PageID.251.) However, all three of the officers remember only one instance of contact. (PageID.146); (PageID.244); (PageID.230.)[4] Thus, Perez is the only person of the four present at the time of the incident to claim he was struck more than once, and his statements are inherently self-serving. See *Mosquera*, 745

---

[3] The Magistrate Judge minimized Perez's statement in open court. This was a mistake. It is highly unlikely that Perez would openly say Cardenas was being "honest" when he testified that he hit Perez with a shoe, or "pushed it" in his face, if indeed Cardenas had beaten Perez with the shoe five times while Perez was held back by the other two troopers.

[4] Trooper Cardenas did not submit an affidavit in this case, but he testified at the preliminary examination in Perez's criminal case that he hit Perez in the face with a shoe.

8

F. App'x at 573 ("our court has repeatedly said that unsubstantiated, *self-serving assertions* will not preclude an adequately supported motion for summary judgment from being granted" (emphasis added)).  With three officers testifying that Cardenas struck Perez once, "the record *taken as a whole* could not lead a rational trier of fact to find for" Perez, and thus there "there is no 'genuine issue for trial.'" *Matsushita Electrical Industrial Co.,* 475 U.S. at 587 (emphasis added).

While it is true that Perez tells a different story than Cardenas, Yates, and Omiljan, summary judgment exists to prevent non-substantiated claims from proceeding to trial.  In *Celotex*, the Supreme Court noted that the purpose of summary judgment is a tool to "isolate and dispose of factually unsupported claims or defenses." *Celotex Corp.*, 477 U.S. at 323–24.  In this case, all the parties agree that Cardenas struck Perez with a shoe after Perez stabbed the police K-9.  The story only diverges insofar as Perez claims he was struck repeatedly, and Yates and Omiljan's potential liability is completely dependent on that divergence.  This case will proceed past summary judgment as Cardenas has not moved for dismissal.  But the tertiary claims against Yates and Omiljan find no support beyond Perez's self-serving testimony and should be disposed of before trial. *Celotex Corp.*, 477 U.S. at 323–24; Fed. R. Civ. P. 56(a).

## II. Yates and Omiljan are entitled to qualified immunity where they did not violate Perez's clearly established constitutional rights.

The Magistrate Judge also recommended denying Yates and Omiljan qualified immunity in this case.  (PageID.252-253.)  Yates and Omiljan object to that finding as well.

9

Yates and Omiljan should also be dismissed from this lawsuit because they are entitled to qualified immunity. "A government official sued under section 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014). The first prong of qualified immunity analysis is whether the plaintiff has alleged facts showing that defendant's conduct violated a constitutional or statutory right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Trial courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In *Brosseau v. Haugen*, the Supreme Court examined the underlying purpose of the requirement that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted . . . . *Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.* If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. 194, 198 (2004) (emphasis added); *see also City & County of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2016) ("An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was

violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate.") (citations and quotations omitted). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citation and quotation omitted). Qualified immunity is an immunity from suit rather than a mere defense to liability. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014).

The Supreme Court has repeatedly held that the second prong of the qualified immunity analysis "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S. at 201). Moreover, courts are "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, 134 S. Ct. at 2023 (citations and quotations omitted); *see also White v. Pauly*, 137 S. Ct. 548, 552 (2017). Finally, "[t]he burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)). That burden applies to each claim. *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2016).

"Once [an] official[ ] raise[s] the qualified immunity defense, the plaintiff bears the burden to 'demonstrate that the official [is] not entitled to qualified immunity.'" *LeFever v. Ferguson*, 645 F. Appx. 438, 442 (6th Cir. 2016) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). A qualified

11

immunity defense can be asserted at various stages of the litigation, including the summary judgment stage. *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994). The qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated. At the summary judgment stage, "the plaintiff must, at a minimum, offer sufficient evidence to create a 'genuine issue of fact,' that is, 'evidence on which a jury could reasonably find for the plaintiff.'" *Thompson v. City of Lebanon, Tenn.*, 831 F.3d 366, 370 (6th Cir. 2016).

In this case, Yates and Omiljan did not violate Perez's clearly established constitutional rights and are thus entitled to qualified immunity. As to the first prong of the qualified immunity analysis, and as argued above, neither Yates nor Omiljan violated Plaintiff's Fourth Amendment rights. *See supra* Part I. As to the second prong, there is no clearly established law that requires police officers to intervene with another officer's use of force before ever witnessing that force and before they are even able to intervene; indeed, clearly established law holds that officers cannot be held liable in such a scenario. See *Turner,* 119 F.3d at 429. Because Yates and Omiljan did not violate Perez's clearly established constitutional rights, they are entitled to qualified immunity and should be dismissed from this lawsuit. *Saucier*, 533 U.S. at 201; *Thompson*, 831 F.3d at 370.

The Magistrate Judge recommended denying Yates and Omiljan qualified immunity for the same reasons discussed above regarding Perez's failure to intervene claim.  (PageID.252-253.)  However, as argued above, that recommendation is in error.  See *supra* Part I.  Perez's self-serving account of the incident is contradicted by all the other individuals present and cannot survive summary judgment.  *Celotex Corp.*, 477 U.S. at 323–24.  And where Perez cannot show Yates and Omiljan violated his constitutional rights, they are entitled to qualified immunity.  *Saucier*, 533 U.S. at 201.

## CONCLUSION AND RELIEF REQUESTED

Defendants Yates and Omiljan object to the Magistrate Judge's Report and Recommendation (PageID.247) ask this Court to grant their Motion for Summary Judgment and dismiss Plaintiff's claims against them for the reasons stated herein.

Respectfully submitted,

Dana Nessel
Attorney General

*/s/ Andrew J Jurgensen*
Andrew J. Jurgensen
Michigan Dep't of Attorney General
Assistant Attorney General
Attorney for Defendants
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
JurgensenA2@michigan.gov
P81123

Dated: October 13, 2020
AG# 2019-0267834-A

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULES

I, Andrew J. Jurgensen, hereby certify that this Objection to the Report and Recommendation contains approximately 3499 words, exclusive of the case caption, cover sheets, any table of contents, any table of authorities, the signature block, attachments, exhibits, and affidavits, and is within the word limit allowed under LCivR 7.3(b)(i) for briefs filed in opposition to a non-dispositive motion.

          */s/ Andrew J Jurgensen*
          Andrew J. Jurgensen
          Michigan Dep't of Attorney General
          Assistant Attorney General
          Attorney for Defendants
          State Operations Division
          P.O. Box 30754
          Lansing, MI 48909
          (517) 335-7573
          JurgensenA2@michigan.gov
          P81123

Dated:  October 13, 2020
AG# 2019-0267834-A

## CERTIFICATE OF SERVICE (E-FILE)

I hereby certify that on October 13, 2020, I electronically filed the above document(s) with the Clerk of the Court using the ECF System. A hard copy of the above documents has been sent by first class mail to:

Jose Antonio Perez #404232
Carson City Correctional Facility
10274 Boyer Road
Carson City, MI 48811-9746

*/s/ Andrew J Jurgensen*
Andrew J. Jurgensen
Michigan Dep't of Attorney General
Assistant Attorney General
Attorney for Defendants
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
JurgensenA2@michigan.gov
P81123